IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FREDRICK A. NELSON, | ) | CASE NO. 5:03 CV 2436 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| REGINALD A. WILKERSON, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I. Introduction

Before the Magistrate Judge[1] is the petition of Fredrick Nelson,[2] currently incarcerated at the Trumbull Correctional Institution upon conviction of one count of aggravated murder,[3] seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Nelson contends that he is entitled to the writ because he was denied the effective assistance of counsel both at trial and on appeal[4] and that Ohio's post-conviction release statute violates the Fourteenth Amendment of the Constitution.[5]

---

[1] ECF # 5 (Order referring the petition to the Magistrate Judge for a report and recommendation).

[2] ECF # 1.

[3] *See*, www.drc.state.oh.us (website of the Ohio Department of Rehabilitation and Correction for current status of and basis for Nelson's incarceration).

[4] ECF # 1 at 3.

[5] *Id*. at 4.

The state acknowledges having custody of Nelson as a result of his conviction for aggravated murder[6] but asserts that Nelson's petition should be dismissed as time-barred[7] or, alternatively, that both grounds be dismissed as procedurally defaulted.[8] Nelson, in response, maintains that, because state actions precluded his timely compliance with the limitations statute, this Court should, in equity, proceed to consider his petition notwithstanding any lack of timeliness.[9] He further argues that the ineffective assistance of his appellate counsel is a sufficient cause for excusing any procedural default and thus permits now addressing his claims on the merits.[10]

For the reasons that follow, the Magistrate Judge recommends finding that Nelson's habeas claims are time-barred and that Nelson has not established a basis in equity to overlook that bar.

**II.     Facts**

*A.     Trial*

The underlying facts were found by the state appeals court to be as follows:

> In the instant case, Nelson's wife, Christine Nelson, disclosed to Nelson that she was having an affair with the decedent Mark Burton. Burton was a cook who worked at the same restaurant as Christine. While never disclosing it

---

[6] *See*, ECF # 14 at 1.

[7] *Id.* at 8.

[8] *Id.* at 11.

[9] ECF # 16 at 2.

[10] *Id.* at 5.

before trial, Nelson testified the day before he killed Burton that Burton had bragged to Nelson that he had sexual intercourse with Christine "and you won't forget it and neither will she." Nelson's murderous plan was executed the next day. The night of August 6, 2000, Nelson went to Burton's workplace, shot and killed him with a shotgun, and scalped him with a knife before he fled the scene.[11]

Nelson was subsequently tried on one count of aggravated murder with a firearm specification and was found guilty by a jury.[12] Nelson was sentenced to life imprisonment with eligibility for parole after serving twenty full years.[13] In addition, he received a sentence of three years for the firearm specification to be served consecutive and prior to the sentence for aggravated murder.[14]

## B.     *Direct appeal*

Nelson, represented by the same counsel as had conducted the defense at trial,[15] thereupon appealed, asserting as his single assignment of error that the trial court erred in failing to give the instruction on voluntary manslaughter as a lesser and included offense.[16] The state appeals court denied the appeal, noting that even if the stated remarks concerning

---

[11] *State v. Nelson,* No. C.A. 20365, 2001 WL 651542, at *2 (Ohio App. 9 Dist. June 13, 2001). A copy of this decision is attached for the convenience of the District Judge.

[12] *Id.* at *1.

[13] ECF # 14, Ex. 7 at 2.

[14] *Id.*

[15] *See*, ECF # 14, Ex. 7 (Judgment entry noting presence of defense counsel), and Ex. 8 (Notice of appeal signed by counsel).

[16] *Id.*

his wife's adultery were true, they did not, under Ohio law, constitute a sufficient basis for instructing on voluntary manslaughter.[17]

Again acting through the same counsel, Nelson then sought review by the Ohio Supreme Court,[18] raising as a single proposition of law that he was "entitled to consideration of a jury instruction on a lesser and included offense of manslaughter where the provocation is caused by words and the subject is infidelity."[19] The state filed an opposition,[20] and the Ohio Supreme Court denied Nelson leave to appeal, dismissing his appeal as not raising a substantial constitutional question.[21]

## C.  *Application to re-open appeal*

Prior to the denial of his appeal by the Ohio Supreme Court, Nelson, now proceeding *pro se,* filed an application to re-open his appeal pursuant to Ohio Appellate Rule 26(B).[22] Nelson asserted that he should be permitted to re-open his appeal because appellate counsel was constitutionally deficient in not raising on appeal the claim that trial counsel was ineffective.[23]

---

[17] *Id*. at *2.

[18] ECF # 14, Ex. 15.

[19] ECF # 14, Ex. 16.

[20] ECF # 14, Ex. 17.

[21] ECF # 14, Ex. 18.

[22] ECF # 14, Ex. 20.

[23] *Id.*

The state responded that Nelson's application was not properly filed inasmuch as he did not attach, as required by Appellate Rule 26(B), a sworn affidavit providing the basis for trial counsel's purportedly deficient performance and a statement of how that deficiency prejudiced Nelson.[24] Nelson then sought to amend the defective application,[25] but the state appeals court denied the amendment, together with the application.[26] Nelson did not appeal that denial to the Ohio Supreme Court.[27]

### D.    *Post-conviction petition*

On the same day he filed his application to re-open his direct appeal, Nelson also filed, *pro se*, a post-conviction relief petition,[28] together with a motion to file that petition out of time.[29] In his petition, Nelson contended that he was distraught and on medication as part of psychiatric counseling during the period from January, 2000 when he first learned of his wife's affair until the murder in August, 2000.[30] He contended that his trial counsel was deficient in numerous ways, including that he did not investigate the fact that side effects

---

[24] ECF # 14, Ex. 21.

[25] ECF # 14, Ex. 22.

[26] ECF # 14, Ex. 23.

[27] *See*, ECF # 14 at 5.

[28] ECF # 14, Ex. 25.

[29] ECF # 14, Ex. 26.

[30] ECF # 14, Ex. 25 at 3-6.

from a medication he was prescribed just ten days before the murder included alcohol abuse, anger/hostility, hallucinations, and suicidal ideation.[31]

Nelson argued that, prior to the crime, he was working effectively as a paramedic, had recently been promoted at work, and had begun a new relationship with a girlfriend when the side effects of new psychotropic medications rendered him "temporarily insane or involuntarily intoxicated."[32] Nelson contended that had his counsel investigated the known side effects of the medications he was taking and presented them to the jury, the result at trial would have been different.[33]

The state opposed Nelson's post-conviction motion, asserting that it was untimely filed and, alternatively, that he failed to show by clear and convincing evidence that, but for the errors of counsel complained of, he would have been acquitted.[34] The state trial court found that Nelson's petition was untimely and, further, held that Nelson was aware of his claims about the medication at the time of trial and had not shown that, but for any error in not raising them at trial, he would have been acquitted.[35]

---

[31] *Id*. at 8.

[32] *Id.* at 11.

[33] *Id.* at 10. Nelson proceeded on alternative theories of ineffective assistance of counsel and the newly discovered evidence of the side effects of his medication.

[34] ECF # 14, Ex. 27.

[35] ECF # 14, Ex. 29.

### E.     *Appeals from the denial of post-conviction*

Nelson then appealed, *pro se*, from the denial of his post-conviction petition.[36]  In his brief,[37] now represented by his present counsel, Nelson raised two assignments of error:

1. The Ohio Post Conviction Relief statute violates the Fourteenth Amendment to the United States Constitution.

2. The trial court erred by denying Fredrick Nelson meaningful access to the courts, which prevented him from establishing his constitutional claim of ineffective assistance of counsel.[38]

After the state filed an opposition,[39] the state appeals court overruled Nelson's two assignments of error.[40]

Nelson, again acting through current counsel, appealed this decision to the Ohio Supreme Court presenting two propositions of law:

1. Where the Ohio Post Conviction Relief statute is applied to an incarcerated, indigent defendant, and it operates to prevent him from gathering the evidence necessary to make a meaningful motion for post conviction relief, then that statute violates the 14th Amendment to the United States Constitution.

---

[36] ECF # 14, Ex. 31.

[37] Nelson's original brief was stricken for failing to comply with local appellate rules (ECF 14, Ex. 32) and was re-filed (ECF # 14, Ex. 33.).

[38] ECF # 14, Ex. 33.

[39] ECF # 14, Ex. 34.

[40] ECF # 14, Ex. 36.

>   2.   A possible constitutional claim need not be raised in the trial court if it is contingent upon future events, and no litigant should be required to assume that the trial court will violate the United States Constitution.[41]

The state filed a memorandum opposing jurisdiction,[42] and the Ohio Supreme Court declined jurisdiction.[43]

## *F.   Federal habeas petition*

Again acting through the same counsel as in the prior appeal, Nelson filed the present petition for federal habeas relief on November 26, 2003, asserting two grounds for relief:

>   1.   Denial of effective assistance of counsel.
>
>   2.   Ohio's Post Conviction Release (sic) statute, as applied to Fredrick Nelson, violates the 14th Amendment to the United States Constitution; and, as applied by the trial court on Fredrick Nelson's motion for post-conviction relief, it prevented him from establishing his constitutional claim of ineffective assistance of counsel.[44]

The state has responded by contending that the current petition is untimely filed or, alternatively, that each of the grounds asserted is procedurally defaulted.[45] Nelson has filed a traverse, captioned as a "response to return to order to show cause," wherein he contends first that equitable considerations should permit this Court to reach the merits of Nelson's habeas claims since Ohio's rules on post-conviction relief, coupled with prison regulations

---

[41] ECF # 14, Ex. 39.

[42] ECF # 14, Ex. 40.

[43] ECF # 14, Ex. 41.

[44] ECF # 1 at 3-4.

[45] ECF # 14 at 8, 11.

on the amount of time a prisoner may spend conducting legal research, combine to deny *pro se* petitioners meaningful access to the courts.[46] Further, he maintains that there has been no procedural default as to his claim of ineffective assistance of counsel since claims of ineffective assistance of trial counsel cannot be made on appeal when the same attorney is serving as counsel.[47] Finally, he asserts that a violation of a state procedural rule that is the subject of the claimed constitutional violation may not be used to bar consideration of that claim under the doctrine of procedural default.[48]

### III. Analysis

#### A. *Statute of limitations*

28 U.S.C. § 2244(d) provides:

(1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of –

  (A) the date on which the judgment became final by conclusion of direct review or the expiration of time for seeking such review;

  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by state action;

  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

---

[46] ECF # 16 at 2-4.

[47] *Id*. at 5.

[48] *Id*. at 5-6.

> > recognized by the Supreme Court and made retroactively applicable to cases on collateral review;
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Here, the state contends that before the limitations period began to run following the Ohio Supreme Court's denial of Nelson's leave to appeal, Nelson filed an application to re-open his appeal.[49] Such an application had the effect under 28 U.S.C. § 2244(d)(2) of tolling the limitations period. The state appeals court denied that application on January 7, 2002 and, after allowing for a period of forty-five days to appeal that denial to the Ohio Supreme Court, an appeal Nelson elected not to take, the federal limitations period began to run on February 21, 2002.[50] Absent any additional tolling, Nelson would have been required to file any habeas petition by February 21, 2003.[51] Instead, Nelson's present petition was not filed until November 26, 2003.[52]

The state argues that he is not entitled to any additional tolling from his post-conviction application, filed in state court on September 10, 2001, contemporaneously

---

[49] ECF # 14 at 10.

[50] *Id.*

[51] *Id.*

[52] *Id.*

with his Rule 26(B) application. The post-conviction application was rejected by the state court as being not timely filed and so, the state argues, Nelson should not be entitled to any added tolling of the habeas limitations period for the untimely petition or any appeals from its denial.[53]

Moreover, the state contends that Nelson has not established any of the other bases in the limitations statute by which the limitations period may be tolled, such as the state precluding timely filing, claims asserted on a newly-recognized right, or late discovery of the factual basis for the claim.[54]

Nelson, while not directly relating it to the limitations period, does argue that state action did create an impediment to his filing[55] and that equitable considerations should operate to overcome any "timing issues" "given the traditionally complex nature of habeas proceedings."[56]

The Supreme Court in *Pace v. DiGuglielmo*[57] recently clarified the rule originally pronounced in *Artuz v. Bennett*[58] that only "properly filed" state post-conviction petitions can toll the limitations period of 28 U.S.C. § 2244(d)(2). In *Pace*, the Court specifically held that

---

[53] *Id*. at 11.

[54] *Id.*

[55] ECF # 16 at 3-4.

[56] *Id.* at 2.

[57] *Pace v. DiGuglielmo,* 544 U.S. 408 (2005).

[58] *Artuz v. Bennett*, 531 U.S. 4 (2000).

"time limits, no matter their form, are 'filing' conditions.  Because the state court rejected petitioner's [post-conviction] petition as untimely, it was not properly filed," and he is not entitled to statutory tolling under § 2244(d)(2)."[59]

Moreover, the *Pace* decision also held that when a habeas petitioner who is ineligible for statutory tolling seeks equitable tolling[60] of the limitations period, he "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."[61]  The questions of statutory and equitable tolling as applied here will be considered separately.

*1.  Statutory tolling*

Considering first the issue of statutory tolling, it is plain that Nelson's post-conviction petition was denied by the Ohio court as being untimely filed and so may not operate to toll the limitations period for habeas review.  That was the holding in *Artuz*[62] and has been explicitly re-stated in *Pace*.

Further, Nelson is not helped by arguing, similar to the petitioner in *Pace*, that he should not be denied statutory tolling based on the untimeliness of his state post-conviction

---

[59] *Pace*, 544 U.S. at 417.

[60] The Court specifically noted that it considered Pace's eligibility for equitable tolling without ultimately reaching and deciding the issue of whether equitable tolling actually applies to AEDPA's statute of limitations.  *Id.* at 418, n.8.

[61] *Id.* at 418.

[62] *Artuz*, decided in 2000, held that a state post-conviction petition is "properly filed" and so tolls the habeas limitations period when its "delivery and acceptance are in compliance with the applicable laws and rules governing filings [of such petitions]," including "time limits upon its delivery."  531 U.S. at 8.

petition since that untimeliness was caused by the unconstitutional operation of Ohio's post-conviction scheme as it relates to prisoners proceeding *pro se.* Essentially Nelson contends that by requiring him to seek post-conviction relief within six months of when his trial transcript was filed and simultaneously with his direct appeal, while limiting his library time and mail privileges, operated to deny him "meaningful access" to the courts and should preclude applying his untimeliness in filing the Ohio post-conviction petition against him in this habeas proceeding.

Initially, the Magistrate Judge observes that the complexity of navigating Ohio's post-conviction process in conjunction with federal habeas proceedings is well-known. But Nelson's difficulty here does not lie with the effect of Ohio's scheme on a *pro se* petitioner but with the operation of the habeas limitations statute where a petitioner is represented by counsel.

Even granting that Nelson may have had difficulty as a *pro se* petitioner in preparing his Ohio post-conviction petition in a timely manner, once that Ohio application was denied as untimely on January 7, 2002, Nelson, particularly after he acquired representation by his present counsel in that same month, should have known that such an untimely petition could not be the basis for a statutory tolling of the federal habeas limitations period. Accordingly, even if Nelson then, through counsel, thought it desirable to continue to appeal the denial of his post-conviction petition through the state courts, he also should have, as the Supreme

Court said in *Pace*, filed a timely "protective" habeas petition which could then have been stayed and abeyed until the conclusion of the state appeals.[63]

It is the failure to recognize in January, 2002 – while Nelson was represented by outside counsel who was presumably not under any restriction imposed by the state as to his access to law libraries or page limits on outgoing mail – that the federal habeas limitations period would not be tolled by appeals from the denial of a post-conviction petition for untimeliness that is the root of the situation now confronting Nelson, not any state protocol that may have contributed to the initial untimeliness.

Therefore, the Magistrate Judge recommends that Nelson's petition not be found to be subject to statutory tolling either directly or by operation of any state process that has been alleged to be unconstitutional.

*2.     Equitable tolling*

As regards equitable tolling, the requirement would be,[64] as stated in *Pace*, that Nelson show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."[65]

---

[63] *Pace*, 544 U.S. at 416.

[64] Again, it must be stated that the Supreme Court in *Pace* stated it has "never squarely addressed the question of whether equitable tolling is applicable to AEDPA's statute of limitations." *Id.* at 418, n.8. Since Pace was not eligible for equitable tolling, the Court assumed its application solely for purposes of denying his argument and without definitively deciding the question. The Magistrate Judge, likewise, here assumes the applicability of equitable tolling for the limited purpose of showing that Nelson is not entitled to it, but obviously does not presume its actual applicability to cases arising under § 2244(d).

[65] *Id.* at 418.

Initially, it should be noted that Nelson has not explicitly argued for equitable tolling, nor advanced specific points applicable to either element of the test set forth in *Pace*. However, the essence of Nelson's contention that Ohio's allegedly unconstitutional post-conviction scheme precluded him from timely exercising his rights and, thus, unfairly exposed him to denial of his federal habeas petition has already been addressed and found unpersuasive. In addition, it should be noted that the material as to the deleterious effects of Nelson's medication, which form the core of his first claim for habeas relief of ineffective assistance of counsel, were known to Nelson in September of 2001 and were part of his untimely motion for state post-conviction relief. As such, they were also, as previously noted, available for inclusion in a timely habeas petition. Furthermore, as also noted, the failure to file such a timely habeas petition cannot be ascribed to "some extraordinary circumstance [standing] in his way,"[66] but, rather, to a decision, entirely in Nelson's hands, and those of his outside counsel, to pursue state appeals from the denial of his untimely state post-conviction petition without apparent regard for the non-interrupted running of the federal limitations period.

Accordingly, without reaching the as-yet undecided issue of whether equitable tolling applies to cases arising under § 2244(d), the Magistrate Judge recommends finding that, even if equitable tolling should apply, Nelson is not eligible for it.

---

[66] *Id.*

**IV.     Conclusion**

The Magistrate Judge recommends that Nelson's petition for habeas relief be dismissed as untimely.

Dated:   July 18, 2006                                          s/ William H. Baughman, Jr.
                                                                United States Magistrate Judge


**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[67]

---

[67] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).